UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT BURNHAM and MICHAEL ASHKER, in both his individual capacity and in his capacity as the Sellers Representative under the Parties' May 5, 2023 Membership Interest Purchase Agreement,<br><br>Plaintiffs,<br><br>v.<br><br>COMPASS MINERALS INTERNATIONAL, INC. and COMPASS MINERALS AMERICA, INC.,<br><br>Defendants. | No. 25 Civ. 3892 (RMB) (OTW) |

### DECLARATION OF ROBERT BURNHAM

I, Robert Burnham, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. In 2018, my business partner, Michael Ashker and I, co-founded Fortress North America LLC ("Fortress" or the "Company"). We created Fortress as a "startup" company to research, develop and distribute a new generation of aerial fire retardants – i.e., those dropped from aircraft – for use in combatting wildfires. Eventually, Fortress became the first new company to enter this field in over two decades, breaking a 23-year monopoly by providing a superior aerial fire retardant product to suppress wildfires.

2. I served as the Chief Executive Officer and a Board Member of Fortress, and, as of 2018, owned approximately 23% of the Company.

3. I created Fortress by using my previous experience and deep background as a federal officer and program manager in wildfire suppression. Building Fortress required years of hard work. These efforts were eventually rewarded when Fortress entered into a $23,000,000 contract with the U.S. Forest Service for the use of Fortress' products during the 2023 wildfire season.

4. To continue growing the Company, Michael Ashker and I accepted an offer in 2019 from Compass Minerals International, Inc. and Compass Minerals America, Inc. (together, "Compass") to become our first strategic investor. Compass eventually purchased additional ownership in October of 2021 and became an approximate 45% owner. Compass acquired the remainder of Fortress on May 5, 2023, through a Membership Interest Purchase Agreement (the "MIPA"). Also included within the "sellers group" in connection with the MIPA sale were the original Fortress shareholders, consisting of our initial employees who helped build the Company, and a few early investors.

5. Due to the highly technical and regulatory nature of the aerial fire retardant space, it was critical that the MIPA stipulated that Compass would operate Fortress as its own separate brand for at least two years. The logic behind this clause was for the long-term benefit of the Company. Michael Ashker and I had a developed a high level of technical integrity and built credible relationships within the federal wildland fire/aviation community, all built off the Fortress brand. All of the parties to the MIPA understood that maintaining Fortress' brand identity was necessary for Fortress to succeed in the federal and state marketplace. For that reason, the MIPA emphasized the need to operate Fortress under a subsidiary to preserve the client relationships and professional credibility that Fortress fought so hard to create. This term was central to the deal. I would not have agreed to the Compass acquisition without this provision in the MIPA.

6. To further ensure that the acquisition would successfully operate as an independent subsidiary, Compass asked both the CFO (Michael Ashker) and me to sign two-year employment agreements. This two-year period would ensure that our leadership team could help get Fortress through the next stages of the federal fire retardant contract, along with extending our product sale into other state agencies and international EU clients. It was particularly important, given that Compass had no experience whatsoever in the fire-retardant industry.

7. It was also critically important to myself and the Fortress team that Fortress continue to operate under its independent brand, in order to fully operate in this challenging federal contracting/regulatory environment. Again, Fortress was built on my previous professional reputation in the federal wildland fire community, and Compass acknowledged that this was a critical component in the MIPA, and provided for a two-year "runway" for extending the leadership team's employment with Compass. Additionally, Michael Ashker and I negotiated with Compass for a provision in the MIPA that, should Compass breach the MIPA, we would be entitled to "specific performance," i.e., to have a court intervene and force Compass to honor its contractual obligation to continue operating Fortress as a going concern.

8. As it turned out, Compass breached the MIPA mere months after closing the transaction. Rather than operating Fortress as its own independent brand—as the MIPA required—Compass collapsed nearly all of Fortress' operations into the Compass infrastructure and corporate brand. This included eliminating Fortress' independent email, removing Fortress' branded website, taking over all marketing and social media, and terminating many of its employees. Compass then removed Michael Ashker and I from the Company that we built from a startup. Compass terminated me as the CEO, and separated me without cause on August 20,

3

2023.  Compass then replaced me with one of its own employees, who had no experience in the fire retardant industry at all.

9. Unsurprisingly, Fortress' business struggled after Compass' wrongful and ill-advised decisions.  On March 25, 2025, Compass announced in its 8-K filing with the SEC that it was exiting the fire retardant business altogether—closing Fortress and firing all of its employees.

10. I was shocked that Compass announced its decision to shut down Fortress entirely.  Michael Ashker and I repeatedly reached out to Compass on behalf of the Sellers Group in hopes of resolving this dispute.  Fortress' business could still be salvaged if Compass would agree to honor the MIPA.  We believed that we were making progress with Compass toward a resolution, when on May 2, 2025, discussions were stopped.  On May 5, 2025, Compass informed the Seller's group that it had entered into an exclusive 20-day period with a third party for the purchase of Fortress and/or substantially all of its assets.  This 20-day period is set to end on Thursday, May 22, 2025, so a sale appears to be imminent.  After additional attempts to resolve our dispute in good faith, we filed this motion for a temporary restraining order and preliminary injunction in hopes of salvaging Fortress and having it once again run as its own independent brand in a good faith manner, as required by the MIPA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this Declaration was executed on May 20, 2025.

By: _____

Robert Burnham