# DOWD BENNETT LLP

**Rebecca McLaughlin**                    **Direct Dial: (314) 889-7300**        **Email: rmclaughlin@dowdbennett.com**

May 22, 2025

**VIA ECF**

Hon. Richard M. Berman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:     *Burnham, et al., v. Compass Minerals International, Inc., et al.*, Case No. 1:25-cv-03892

Dear Judge Berman:

We represent Defendants Compass Minerals International Inc. and Compass Minerals America, Inc. (collectively, "Defendants"). Per the Court's May 22, 2025 Order, we write to briefly lay out why granting Plaintiffs Robert Burnham ("Burnham") and Michael Ashker's ("Ashker") (collectively, "Plaintiffs") Temporary Restraining Order ("TRO") would be inappropriate and do nothing but award Plaintiffs' misuse of the judiciary's time and resources in pursuit of securing leverage in a business transaction. Because Plaintiffs have not demonstrated that they are likely to succeed on the merits or that they face imminent threat of irreparable harm, we ask that the Court refuse to reward Plaintiffs' behavior; deny Plaintiffs' TRO; and, instead, set a briefing schedule on Plaintiffs' motion for Preliminary Injunction.

## BACKGROUND

Plaintiffs are the co-founders of Fortress North America, LLC ("Fortress"), a distributor and manufacturer of fire retardants that was acquired by Defendants in May 2023 following the execution of a Membership Interest Purchase Agreement ("MIPA"). *See* Declaration of E. Dowling) (hereinafter "Dowling Decl.") at ¶ 3. After the acquisition, the United States Forestry Service ("USFS")—the largest and most significant customer of fire retardants—performed an

initial inspection of Fortress's magnesium chloride fire retardant, and determined that it caused air tanker corrosion issues. *Id.* at ¶¶ 11-12. As a result, the USFS refused to enter into a 2024 contract with Defendants. *Id.* at ¶ 13. The loss of its largest and most significant customer was devastating to Fortress's business, and as a result, Defendants made the commercially reasonable business decision to ultimately shut down Fortress on March 25, 2025. *Id.* at. ¶¶ 14-15. All employees have since been let go and operations have ceased. *Id.* at ¶ 15.

On April 8, 2025, Plaintiffs filed this lawsuit alleging Defendants violated the MIPA— alleging, in part, that Defendants violated the Agreement by not operating Fortress until May 5, 2025 (two years after the close date). As the Court is aware, upon filing the lawsuit, Plaintiffs did not seek a TRO or Preliminary Injunction to force any of the relief now sought.[1] The Complaint goes onto allege that Plaintiffs are entitled to damages based on earn-out and milestone payments, the calculations for which are found in the MIPA.

Since filing this lawsuit, Plaintiffs were involved in business discussions with Defendants regarding the sale of the Fortress business. Moreover, Plaintiffs were aware for **<u>over a month</u>** that other third parties were similarly interested in purchasing the Fortress business. Dowling Decl. at ¶ 4. Ultimately, Defendants entered into an exclusivity period with a different third party and informed Plaintiffs of that fact over two weeks ago. *Id.* at ¶ 6. Now, two days before the end of the exclusivity period, Plaintiffs have had a sudden revelation of urgency and bring a motion for TRO or Preliminary Injunction based on the same allegations that they brought almost two months ago—i.e., Defendants' decision to shut down Fortress's operations prior to May 5, 2025.

---

[1] Nor did Plaintiffs seek injunctive relief when they first became aware of Defendants' purported breaches in 2023.

**LEGAL STANDARD**

"A plaintiff seeking a temporary restraining order must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Basank v. Decker*, 449 F. Supp. 3d 205, 210 (S.D.N.Y. 2020). "It is well established in this circuit that the standard for entry for a TRO is the same for showing a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). Both preliminary injunctions and temporary restraining orders are "extraordinary remedies" requiring a movant to demonstrate "by a clear showing" he is entitled to such relief. *Ramos v. Dep't of Homeless Servs.*, 2022 WL 4234557, at *3 (S.D.N.Y. Sept. 14, 2022)).

**ARGUMENT**

I.    **Plaintiffs Are Unlikely to Succeed on the Merits of their Breach of Contract Claim Because Defendants Met Its Obligations Under the MIPA.**

Plaintiffs allege that Defendants breached the MIPA in three ways: (1) by terminating Mr. Burnham and Mr. Ashker; (2) by shutting Fortress's operations down on March 25, 2025 (in alleged violation of Section 2.08(c)); and (3) by not operating under its existing name and independent branding for two years. *See* ECF No. 14 at 12. None of these alleged violations will ultimately succeed.

First, Defendants did not breach the MIPA in terminating Mr. Burnham and Mr. Ashker because they were terminated for cause. An outside investigation substantiated that Mr. Burnham and Mr. Ashker had engaged in alarming misconduct including, but not limited to, dishonesty in communications to the USFS, which potentially jeopardized Fortress's relationship with its only significant customer. Given that Plaintiffs' separations were justified, Defendants cannot be held

liable for their terminations. *See* Ex. A, Ashker and Burnham's Employment Agreements, § 5 ("[T]he Company may terminate the Executive for Cause with immediate effect.").

Second, Defendant did not breach the MIPA by shutting down Fortress's operations in March 25, 2025, following the loss of its only significant source of revenue. Under § 2.08(c) of the Contract, Defendants were required to use commercially reasonable efforts to operate Fortress. *See* § 2.08(c)(iii) (defining "Commercially Reasonable Efforts" as applied to § 2.08(c)). Defendants did, in fact, use commercially reasonable efforts to operate Fortress but, after the loss of USFS (Fortress's only significant customer), it was no longer reasonable to continue operating the business at a loss and, under New York law, Defendants were not required to do so. *See e.g.*, *InspiRx, Inc. v. Lupin Atlantis Holdings SA*, 554 F. Supp. 3d 542, 557 (S.D.N.Y. 2021) (finding that a "commercially reasonable efforts" provision did not require the defendant to continue commercializing a product when doing so had caused "mounting losses" and suggesting that doing so could have been commercially *un*reasonable) (emphasis added)); *Holland Loader Co., LLC v. FLSmidth A/S*, 313 F. Supp. 3d 447, 473 (S.D.N.Y. 2018) ("In sum, compliance with a 'commercially reasonable efforts' clause requires at the very least some conscious exertion to accomplish the agreed goal, but something less than a degree of efforts that jeopardizes one's business interests.*"*). Because the business was no longer in operation, the requirement to operate it under its independent branding no longer existed as a predicate for that requirement ("operation") had ceased.

Third, Defendants did not breach the MIPA's requirement to operate Fortress under its existing name and branding prior to the cessation of operation in March 5, 2025. Defendants conducted business under the Fortress entity legal names and held itself out in the market as Fortress using Fortress logos and branding. Fortress branding was used in the numerous

communications between USFS and the United States Department of Agriculture ("USDA");  was used on proposals to the USFS during the 2024 fire season contract negotiations; and was used in the signatures of Fortress employees' email accounts. Although Fortress employee email accounts had to be altered in order to integrate the business into Defendants' IT structure, such a small (and necessary) change does not evince a breach of the MIPA.

Because Plaintiffs are unlikely to be successful on their claims, a TRO should not be entered.

## II.    Plaintiffs Will Not Suffer Irreparable Harm.

"The showing of irreparable harm is perhaps the single most important prerequisite for" obtaining injunctive relief." *CF 135 Flat LLC v. Triadou SPY N.A.*, 2016 2349111, at *1 (S.D.N.Y. May 3, 2016). To demonstrate irreparable harm, "the movant must show that the injury [he] will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *Id.* (quotations omitted). "The ability of plaintiff to recover money damages as an adequate remedy for losses suffered precludes a finding of irreparable harm." *PDL Vitari Corp. V. Olympus Indus., Inc.*, 718 F. Supp. 197, 205 (S.D.N.Y. 1989) (denying motion for preliminary injunction where plaintiff's alleged losses were capable of ascertainment).

Courts are obligated to make an independent determination as to whether injunctive relief is appropriate, even if the applicable contract declares money damages inadequate for purported breaches. *Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 396 (E.D.N.Y. 2016); *see also Firemen's Ins. Co. of Newark v. Keating*, 753 F. Supp. 1146, 1154 (S.D.N.Y. 1990) ("[I]t is clear that the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate.").

A.  <u>Plaintiffs' Delayed in Seeking Injunctive Relief for Over a Year, Until Plaintiffs'</u>
<u>Negotiations with Defendants Fell Through.</u>

As a threshold matter, Plaintiffs delayed seeking injunctive relief for over a year, making

clear that the alleged harm is not truly imminent. "While delay does not always undermine an

alleged need for preliminary relief, months-long delay in seeking [injunctive relief has been]

repeatedly held by courts in the Second Circuit to undercut the sense of urgency." *Goldstein v.*

*Hochul*, 2022 WL 20305832, at *2 (S.D.N.Y. 2022) (citing *Silent Gliss Inc. v. Silent Gliss Int'l*

*Ltd.*, No. 22-CV-522(EK)(MMH), 2022 WL 1525484, at *8 (E.D.N.Y. May 13, 2022)); *see also*

*Hopkins Hawley LLC v. Cuomo, No. 20-CV-10932 (PAC)*, 2021 WL 8200607, at *1 (S.D.N.Y. Jan.

8, 2021) (finding that a three-week delay between the announcement of a policy and Plaintiffs

filing a TRO constituted "lack of immediacy"). "This lack of immediacy belies the notion that

Plaintiffs' alleged harm is sufficiently 'immediate' such that the extraordinary relief of a temporary

restraining order is necessary or justified." *Goldstein*, 2022 WL 20305832, at *2.

In Plaintiffs' Motion, they argue that "within months of signing the MIPA, Compass began

to dismantle Fortress piece-by-piece . . . remov[ing] all of Fortress' branding and marketing, shut

down Fortress' independent website" among other allegations. *See* ECF No. 14 at 3. Plaintiffs

further contend that "[o]n March 25, 2025—less than two years after the May 5, 2023 purchase—

Compass publicly announced its decision to shut down Fortress and layoff the Company's entire

workforce." *Id.* at 3-4. Only now, **two weeks** after learning of Defendants' "exclusive 20-day period

within which to finalize a sale of Fortress and/or its assets," (ECF No. 14 at 10), nearly **two months**

after purportedly learning of Defendants' alleged decision to shut down Fortress and ultimately

filing the instant lawsuit, and *over a year* after Defendants purported dismantling of Fortress—

both of which Plaintiffs contend are breaches of the MIPA—do Plaintiffs seek a temporary

restraining order. This delay is without explanation and makes clear that Plaintiffs' purported injury stemming from Defendants' alleged breach of the MIPA is not truly "imminent."

As noted above, Plaintiffs have been negotiating a purchase of Fortress for the last several months. Dowling Decl. at ¶ 3. During their own negotiations, Plaintiffs became aware that a third-party entity was also interested in purchasing Fortress. *Id.* at ¶ 4. Despite this knowledge, Plaintiffs elected not to seek injunctive relief. Only now that Plaintiffs believe a sale to a third party—rather than to them—is likely to close have they sought the extraordinary remedy of a temporary restraining order, conveniently working to block the potential transaction.

### B. Plaintiffs' Request for Specific Performance is Impracticable.

Courts have made clear that specific performance may be precluded as a remedy due to impossibility or impracticability. *See Edge Grp. WAICCS LLC v. Sapir Grp. LLC*, 705 F. Supp. 2d 304, 318 (S.D.N.Y. 2010) ("We conclude that specific performance may be precluded by impossibility of performance either at the time of breach or at the time that court relief is sought."); *see also Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 439, 443, 136 N.E.2d 484, 486 (1956) (explaining that a court may award monetary damages "when that form of relief becomes necessary in order to prevent a failure of justice and when it is for any reason impracticable to grant the specific relief demanded").

While Plaintiffs contend that "a sale of Fortress' assets will render the Company unsalvageable" and will make specific performance impossible (ECF No. 14 at 15), Plaintiffs fail to note that specific performance is already impracticable. As noted in Compass Minerals' May 21, 2025 Letter (ECF No. 21), Plaintiffs' Complaint alleges that Defendants breached the MIPA by shuttering Fortress on March 25, 2025, rather than May 5, 2025, and requested specific performance in that Defendants reopen and operate Fortress through that date. *See* ECF No. 1, Ex.

B (Complaint), at ¶ 38(a); *see also* ECF No. 15-1 (MIPA) at § 2.08(c)(i)(C). In other words, the specific performance Plaintiffs request from this Court is for Defendants to go back in time and continue operating Fortress for a period of less than two months because, by doing so, Plaintiffs *might* have been entitled to additional payouts as Sellers under the MIPA. This is impracticable and unwarranted.

In support of their TRO, Plaintiffs cite to *RMP Capital Corp. v. Bam Brokerage, Inc.*, 21 F. Supp. 3d 173, 182 (E.D.N.Y 2014) for the proposition that "the loss of an ongoing business representing many years of effort" qualifies as irreparable harm incapable of being ascertained via money damages. *See* ECF No. 14 at 14. But Plaintiffs explicitly make clear that they were aware of Defendants purported decision to "shut down Fortress" on March 25, 2025—six weeks prior the two-year anniversary of Defendants' acquisition of Fortress, nearly two months prior to Plaintiffs' Motion for Temporary Restraining Order, and over a year after Plaintiffs contend that Defendants began to "dismantle Fortress piece-by-piece." *Id.* at 3-4. As such, Fortress is not presently an "ongoing business."

Even under Plaintiffs' interpretation of the MIPA, Defendants would not be contractually obligated to operate Fortress following the two-year anniversary of the May 5, 2023 Closing. Rather than seeking injunctive relief when Plaintiffs claim to have first learned of Defendants' purported breaches of the MIPA, Plaintiffs now seek specific performance of an obligation that Defendants are no longer contractually required to satisfy. As such, a temporary restraining order seeking specific performance is impracticable and inappropriate.

C. <u>Plaintiffs' Alleged Damages are Capable of Being Remedied via Money Damages.</u>

In any event, Plaintiffs purported damages are capable of being remedied monetarily. "While the Court has the discretion to permit injunctive relief for breach of contract, the classic

remedy for breach of contract is an action at law for damages." *Rosenfeld v. W.B. Saunders*, 728 F. Supp. 236, 244 (S.D.N.Y. 1990). "If the injury complained of may be compensated by an award of monetary damages, then an adequate remedy at law exists and no irreparable harm may be found as a matter of law," but "the mere necessity of making an informed approximation of damages should not preclude the adequacy of a legal remedy." *Id.* (citations and quotations omitted).

The additional payouts that Plaintiffs could or should have received under the MIPA, whether it be for the allegedly early stop in operations or for any other alleged breaches that impacted sales or operational goals, can all be remedied by economic damages based largely on the calculations set out in the MIPA. For example, the MIPA specifically sets forth the process by which Plaintiffs "unearned or unpaid Milestone Payments" are to be paid in the event of a company sale. *See* ECF No. 15-1 at § 2.07(c), Ex. E. Any sale of Fortress, which will necessarily occur after the two-year deadline set forth in Section 2.08(c)(i)(C) of the MIPA by which Plaintiffs contend that Defendants were allegedly required to operate Fortress, does not change the economic nature of Plaintiffs' relief.

Furthermore, as Plaintiffs allege in their Motion, "Fortress is one of only two competitors in the entire [fire retardant] industry." ECF No. 14 at 2. Insofar as Plaintiffs contend that Defendants' alleged actions impeded Fortress's market performance and consequently, payments owed to Plaintiffs, Plaintiffs can introduce testimony to demonstrate what their purported payments might have been based on certain market share analysis. Given the size of the fire-retardant market, it is unlikely that such an analysis would "not be capable of reliable calculation" or "difficult to measure." *See* ECF No. 14 at 15.

Plaintiffs claimed damages are economic in nature, and do not give rise to the "likely and imminent harm" required to justify injunctive relief at this time. Accordingly, no irreparable harm exists, and Plaintiffs' Motion should be denied.

## III.    The Balance of Equities Weighs Strongly Against Plaintiffs

As an initial matter, Plaintiffs' failure to establish irreparable harm, *see supra* Section II, is fatal to their argument that the balance of equities weighs in favor of relief. *Medike Int'l Corp. v. Giller*, No. 23-CV-8939 (JPO), 2024 WL 139575, at *6 (S.D.N.Y. Jan. 12, 2024) ("Given [Plaintiffs'] failure to establish a likelihood of irreparable harm, the balance of the equities tips in Defendants' favor."); *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) ("[T]he moving party must first demonstrate that [irreparable harm] is likely before the other requirements for the issuance of an injunction will be considered." (cleaned up)).

Further, Plaintiffs requested relief would impose substantial harm on Defendants that far outweighs any harm alleged by Plaintiffs. At this moment, Defendants have an eager buyer for Fortress—a business that currently has no employees and no sources of revenue. Plaintiffs requested relief would immediately halt the deal, potentially placing it on hold for years as the present litigation continues. Any further delay to closing the sale would continue to diminish the likelihood of closing and the value of the deal. In fact, Plaintiffs have previously acknowledged that the sale of Fortress to the third party buyer is a lucrative deal and therefore halting the deal will cause Defendants to "forefeit[] their opportunity to earn tens of millions of dollars."[2]

---

[2] *See* Complaint, *Robert Burnham, et al. v. Fortress North America, LLC, et al.*, No. 2:24-cv-03298 (E.D. Cal.) ECF 1, Ex. B ¶ 21( alleging that "[p]rior to Compass acquiring Fortress, Perimeter Solutions, the primary competitor in the fire-retardant space, made several attempts to acquire Fortress and even presented Burnham and Ashker with letters of intent in excess of $150 million dollars," and that when Compass acquired Fortress, "Burnham and Ashker forfeited their opportunity to earn tens of millions of dollars on the sale of their ownership interests to Perimeter Solutions"); Complaint, *Michael Ashker, et al. v. Fortress North America, LLC, et al.*, No. 2:24-cv-03297 (E.D. Cal.) ECF 1, Ex. B ¶ 18 (same).

**IV.     A Temporary Restraining Order is Not in the Public Interest**

Plaintiffs' argument that this Court should prevent Defendants' sale of Fortress due to concerns of consolidation in the fire retardant industry is undermined by the fact that Plaintiffs prior to selling to Defendants, pursued the sale of Fortress to the *same buyer*. In addition, Plaintiffs fail to cite any legal support for their argument.

While there is a "strong public interest in enforcing the parties' bargained-for agreement," Plaintiffs here do not seek to enforce the agreement they bargained for. *Espiritu Santo Holdings, LP v. L1bero Partners, LP*, No. 19 CIV. 3930 (CM), 2019 WL 2240204, at *26 (S.D.N.Y. May 14, 2019). Instead, Plaintiffs are attempting to rewrite the MIPA and force Defendants to retain ownership of a business that Defendants fully acquired from Plaintiffs over two years because Plaintiffs have decided they now want to purchase the company back. The public interest cuts strongly against Plaintiffs' requested relief. *Golden Unicorn Enters., Inc. v. Audible, Inc.*, 682 F. Supp. 3d 368, 376 (S.D.N.Y. 2023) ("Plaintiffs 'seek[] to rewrite the contract to say something other than what it says. Far from compelling that outcome, New York law expressly prohibits it.'" (citation omitted)).

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court deny Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

*Rebecca R. McLaughlin*

CC: Plaintiffs' Counsel (*via ECF*)